382

(No. 66386.—

*In re* ADOPTION OF THOMAS G. SCRAGGS (Dwight
Scraggs, Appellant).

*Opinion filed December 6, 1988.*

Matthew A. Maloney, of Pierson, Maloney & Rayfield, of Princeton, for appellant.

Kevin R. Galley, of Pace, McCuskey & Galley, of La-

con, for appellees.

JUSTICE RYAN delivered the opinion of the court:

Dwight Scraggs appeals from a preliminary injunction order of the circuit court of Putnam County prohibiting him from having any contact with his son, Thomas G. Scraggs, prior to a hearing on a motion to terminate his rights as the natural father held pursuant to the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1516(B)(d)). In a Rule 23 order (107 Ill. 2d R. 23), the appellate court, with one justice dissenting, affirmed the issuance of the injunction. (165 Ill. App. 3d 1163 (unpublished order).) We granted leave to appeal (107 Ill. 2d R. 315).

On November 25, 1975, Linda Jean Burden and Dwight Scraggs were married in Illinois. The couple subsequently moved to West Virginia, the home State of Dwight. One child, Thomas G. Scraggs, was born of the marriage on October 1, 1976. Before the birth of the child, Linda and Dwight separated and Linda moved back to Illinois. On June 1, 1977, the marriage was dissolved by a judgment entered in the circuit court of Marshall County. The divorce decree granted custody of the child to the mother, with right of reasonable visitation being granted to the father. The father was also directed to pay $15-per-week child support.

Both prior to and after the divorce Linda placed the child for various periods of time with her brother and his wife, Kelly R. Burden and Janet L. Burden, the petitioners below. Since approximately March 1, 1979, the child has been in their permanent custody. On January 26, 1987, they filed an adoption petition in the circuit court of Putnam County. The petition alleged that both of the child's natural parents were unfit parents and that they had abandoned the child. The Burdens also filed a motion for a temporary restraining order to prohibit the natural father from having any contact with the child.

The motion alleged that to allow Dwight Scraggs to visit the minor child would disrupt the stability of the Burden family and would be seriously detrimental to the safety, mental well-being, stability, and health of the child. The court granted the restraining order and extended it on numerous occasions until service could be obtained on Dwight Scraggs and a full hearing held on the motion.

The natural mother, Linda, executed a consent to the adoption on February 3. On February 11, Dwight Scraggs filed in Marshall County a petition for rule to show cause in the divorce proceeding why Linda should not be held in contempt for failure to allow visitation and a petition to modify the divorce decree to allow visitation in West Virginia during the child's summer vacations. The judge presiding over the adoption in Putnam County also presided over the divorce matter in Marshall County, and in early March he stayed the divorce case until resolution of the adoption proceeding. (Putnam and Marshall Counties are both in the Tenth Judicial Circuit.) Service on Scraggs was had in West Virginia and a hearing on the preliminary injunction was held on March 31, 1987.

Testifying at the hearing were the natural parents, the petitioners, the child, and a sister of both the natural mother and one of the petitioners. Evidence established that since the divorce, Dwight Scraggs has lived in West Virginia and has remarried. He has paid only $150 in child support and has had limited contact with Thomas. The last time he visited with the child was in April of 1979, when he took the child to West Virginia for two weeks. The following year, the Burdens contacted him and said that they would like to adopt Thomas. Apparently, three days later Dwight showed up at their house and asked if he could take the child to dinner. He was not given an answer and was told to come back later. That evening he returned but was not allowed to see

Thomas. Dwight contacted an attorney and was told that he may be able to prevent the adoption though he most likely could not obtain custody of the child. The Burdens then decided that at that time they would not further pursue an adoption, and that their chances to adopt would be better at a later date. Since 1980, Dwight has not gone to visit the child and has sent no cards, letters, or gifts. Dwight claims to have called at least once a year but that he was not allowed to talk to Thomas. He also claims he did not attempt to write because he did not believe that the child would receive the correspondence.

The petitioners testified that since the incident in 1980, they did not hear from Dwight until January 19, 1987, when he telephoned them requesting to talk to Thomas. The request was denied and after the call they decided to file the petition for adoption. At the time of the hearing Thomas was 10 years old. He testified that he did not want to visit with Dwight and that he was hurt that he had never called. He also said he was scared that Dwight might take him away from his family. The trial court found that, due to the age of the child and the length of the separation, irreparable harm would be caused to the child and nothing would be gained if visitation were allowed. The court granted the preliminary injunction until a hearing on the fitness of the natural father could be held. The appellate court affirmed, holding that the injunction was necessary to preserve the "status quo" and that it served the best interests of the child.

The first issue presented on appeal is whether an injunctive action is appropriate in a proceeding under the Adoption Act. Section 20 of the Adoption Act provides:

> "The provisions of the Civil Practice Law and all existing and future amendments of that Law and the Supreme Court Rules now or hereafter adopted in relation

to that Law shall apply to all adoption proceedings except as otherwise specifically provided in this Act.

No matters not germane to the distinctive purpose of a proceeding under this Act shall be introduced by joinder, counterclaim or otherwise." (Ill. Rev. Stat. 1985, ch. 40, par. 1524.)

The petitioners and the appellate court, in construing this provision, seemingly reasoned that the Code of Civil Procedure applies to an adoption proceeding, unless otherwise provided for in the Act, and injunctive relief is an available action because it is found within the Code. However, section 20 quoted above provides that provisions of the *Civil Practice Law* apply to adoption proceedings, except where specifically provided otherwise, not the Code of Civil Procedure. "Civil Practice Law" refers only to article 2 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—101 *et seq.*), and injunctions are found in article 11 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 11—101 *et seq.*).

An injunction may nevertheless be available if it is germane to the distinct purpose of the Adoption Act. The paramount consideration in the construction and interpretation of the Adoption Act is the best interests and welfare of the person to be adopted. (Ill. Rev. Stat. 1985, ch. 40, par. 1525; *Lingwall v. Hoener* (1985), 108 Ill. 2d 206, 213; *Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 275.) There may well be situations in a contested adoption proceeding which would require an injunction to protect the child. For instance, there may be threats of physical harm to the child if he is uncooperative with either the natural parent or adopting parents, or there may be a risk that the child will be abducted if visitation were allowed. We therefore hold that an injunction may be germane to an adoption proceeding and may be granted in the appropriate case.

The next issue is whether, under the circumstances of this case, the injunction was warranted. The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits of the cause. (*Interstate Material Corp. v. City of Chicago* (1986), 150 Ill. App. 3d 944, 951; *Bismarck Hotel Co. v. Sutherland* (1980), 92 Ill. App. 3d 167, 175.) It is an extraordinary remedy which is applicable only to situations where an extreme emergency exists and serious harm would result if it is not issued. (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386.) The plaintiff must establish four factors before an injunction will be granted: (1) that he possesses a clearly ascertained right in need of protection; (2) that he will suffer irreparable harm without the injunction; (3) that there is no adequate remedy at law for his injury; and (4) that he is likely to be successful on the merits of his action. 108 Ill. 2d at 387.

The circuit and appellate courts held that the injunction in this case maintained the status quo and that it served the best interests of the child. However, in this case, the injunction did not maintain the status quo, but in fact created a new status quo while disregarding the interests of the natural father. The status quo prior to the injunction was that the respondent had the legal right to visit his son, Thomas. As the natural father, he had two bases to support his right of visitation until adjudicated unfit. First, the divorce decree granted him reasonable visitation. Though it is questionable whether he actively exercised this right in the previous seven years, he did attempt to re-establish the relationship with Thomas, and he filed an appropriate rule to show cause petition when he was denied visitation. (*People ex rel. Argo v. Henderson* (1981), 97 Ill. App. 3d 425, 428.) That action was stayed due to the pendency of the adoption petition.

Second, as the natural father he has an inherent right to the society of his child. (See *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 515; *In re Custody of Menconi* (1983), 117 Ill. App. 3d 394, 396; *In re Adoption of Vienup* (1976), 37 Ill. App. 3d 217, 222; *In re Grant* (1975), 29 Ill. App. 3d 731, 735.) The rights of the natural father should only be abrogated in exceptional circumstances and only after close scrutiny. (*In re Marriage of Blanchard* (1987), 162 Ill. App. 3d 202, 207; *In re Grant*, 29 Ill. App. 3d at 735; 67A C.J.S. *Parent & Child* §41 (1978).) Certainly, the overriding interest in any adoption proceeding is that of the child. (*Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 275.) However, there must be an appraisal of the effect of the adoption on the natural parent whose relationship is sought to be terminated (*In re Adoption of Kleba* (1976), 37 Ill. App. 3d 163, 167), and these rights should only be terminated after unfitness has been established by clear and convincing evidence (*In re Adoption of Burton* (1976), 43 Ill. App. 3d 294, 301). The preliminary injunction in this case was equivalent to an effective and premature termination of the natural father's parental right of visitation with and of the society of his child, with little, if any, consideration being given to the father's interest.

In granting the injunction, the circuit court found that irreparable harm would be done to the child and that nothing good would come by allowing visitation. We cannot agree. There has been no threat of violence on Dwight's behalf, nor is there any indication that he intends to abscond with the child or that he poses an immediate threat to the child's mental health, stability or well-being. Moreover, this injunction may hinder Dwight's presentation of evidence at the fitness hearing. Though it appears that the child is happy in his present home environment and expressed a desire not to visit with Dwight, we do not find sufficient facts establishing

that irreparable harm is likely to occur if the injunction is not granted.

Neither the pleadings nor the evidence disclose that irreparable harm is likely. Being sensitive to the inherent right of the natural father to the society of his child, the injunction must be dissolved. This holding is only meant to dissolve the injunction and should have no bearing on the merits of the adoption. The judgments of the circuit court and the appellate court are reversed, and the cause is remanded to the circuit court of Putnam County.

*Reversed and remanded.*