**Geri ACUFF and Julie Stearns, Plaintiffs,**

v.

**IBP, INC., Defendant.**

**No. 97–4126.**

United States District Court, C.D. Illinois. Rock Island Division.

July 27, 1999.

---

21. Their request for costs and attorney's fees is hereby denied.

Robert K. Leyshon, Winstein Kavensky & Wallace, Rock Island, IL, for Geri Acuff, Julie Stearns, plaintiffs.

Arthur W. Eggers, James S. Zmuda, Califf & Harper PC, Moline, IL, for IBP, Inc., defendant.

### ORDER

MIHM, District Judge.

This matter is before the Court on Defendant, IBP Inc's., Motion for Summary Judgment [# 55]. Plaintiffs, Geri Acuff and Julie Stearns, have responded. For the reasons set forth below, the Motion [# 55] is DENIED.

### Jurisdiction

There is no dispute that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

### Facts

Plaintiffs, Geri Acuff and Julie Stearns, are occupational health nurses formerly employed by Defendant, IBP. Management at the IBP facility where Plaintiffs worked installed a concealed video camera in the Nurse Manager's Office in the hopes of identifying who was responsible for certain thefts from the area. On or about October 28, 1997, Fred MaGee was terminated from IBP when the video taken by the hidden camera showed him looking through drawers in the office. Later that day, Magee told Stearns about the video camera in the office. Acuff had also heard a rumor from an unidentified source that there was a camera in the office.

By way of affidavit, Plaintiffs indicate that they believed the recording of examinations was illegal and violated the rights of patients. With that evidently in mind, on October 29, 1997, Plaintiffs looked for and discovered the camera which was concealed in the false ceiling of the Nurse Manager's Office. Fearing that no one would believe that they had found a camera, Plaintiffs showed the camera to several people at IBP, including supervisor Gordon Hyman, security guard Dawn Tucey, and another man named Dana Tice. Afterwards, Plaintiffs returned the camera back to its concealed location.

When Stearns arrived at work the following day, she was asked by Facility Manager Rick Nimrick why she had looked for the camera. Stearns indicated that she looked because she had heard from MaGee that there was a camera in the office and that she felt it was illegal and a violation of the rights of patients to tape examinations. Nimrick then suspended Stearns from work and told her to return the following day to see if she still would be employed by IBP.

About one hour later Acuff arrived at work. She was immediately stopped by IBP security who confiscated her IBP identification card which she needed to enter the facility. As with Stearns, Nimrick questioned Acuff about the camera and told Acuff to return the following day as her continued employment was, likewise, uncertain.

The next day, October 31, 1997, Plaintiffs together returned to IBP. Nimrick asked each Plaintiff to come to his office and talk to him separately. Acuff, under the impression that she had a right to have someone else present in the room, declined to go to Nimrick's office. Both Plaintiffs stated that they wanted each other or someone else to be present during the meeting. When the Plaintiffs refused to meet with Nimrick separately, he fired both Acuff and Stearns for insubordination.

In Plaintiffs' Second Amended Complaint, they allege that they were terminated for discovering and complaining about the videotaping of the nurses' office and were wrongfully terminated for such. The Second Amended Complaint alleges the existence of a public policy in Illinois which protects the examinations and communications between nurses and patients. Specifically, Plaintiffs claim a relevant public policy is articulated in the following sources:

1. Illinois' Nursing and Advanced Practice Nursing Act, 225 ILCS 65 *et seq.*;

2. Medical Patients Rights Act, 410 ILCS 50/1 *et seq.*[1]

3. Illinois' Healthcare Practitioner Privilege, 735 ILCS 5/8-802;

4. Illinois' Eavesdropping Statute, 720 ILCS 5/14-2 and 720 ILCS 5/14-4; and

5. Illinois Constitution Article 1, § 12.

Amended Complaint at 3.

On April 2, 1999, Defendant moved for Summary Judgment. Plaintiffs have responded and this Order follows.

### Discussion

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the records or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party may meet its burden by showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 2553, 106 S.Ct. 2548. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 106 S.Ct. at 2511.

### A. Illinois Employment at Will—And the Exception Thereto

In this case, Plaintiffs allege that they were discharged because of their concern about, and disclosure of, the covert videotaping. The general rule followed in Illinois with respect to the employer-employee relationship is employment at will. Under employment at will, an employee may be fired for any reason or no reason at all, so long as the discharge does not violate clearly mandated public policy.

---

1. This basis was added pursuant to this Court's leave allowing Plaintiffs to supplement their response to Defendant's Motion for Summary Judgment. Defendant has responded with a supplemental pleading.

*Belline v. K–Mart Corp.*, 940 F.2d 184, 186 (7th Cir.1991).

■ There is, however, a limited exception to the employment at will doctrine known as retaliatory discharge. *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). Three elements to the prima facie case of retaliatory discharge must be met in order for Plaintiffs to succeed. The Plaintiffs must prove:

1. They were discharged;
2. Their discharge was in retaliation for engaging in protected activities; and
3. Their discharge violated a clearly mandated public policy.

*Hartlein v. Illinois Power Co.*, 151 Ill.2d 142, 176 Ill.Dec. 22, 601 N.E.2d 720 (1992).

There is no dispute that Plaintiffs were discharged; they have therefore established the first element. The dispute centers around the latter two elements. In short, IBP argues that there is no "clearly mandated public policy" which would allow Plaintiffs to fall within the narrow "whistleblower" exception to the employment at will doctrine. This Court disagrees.

At the outset, it should be mentioned that the bar is set quite high for the plaintiff who attempts to come within Illinois' "whistleblower" exception. As a sister district court observed:

A former employee does not state a claim for retaliatory discharge based on his dismissal over ethical concerns, accounting practices, or intentional contractual breaches, or other business improprieties not rising to the level of crimes.

*Nappi v. Meridian Leasing Corp.*, 859 F.Supp. 1177, 1180 (N.D.Ill.1994).

Additionally, the Illinois Supreme Court has not invited courts to engage in judicial activism when addressing retaliatory discharge claims. The Illinois Supreme Court has stated:

Contrary to Plaintiffs' assertion, however, this court has not ... "rejected a narrow interpretation of the retaliatory discharge tort" and does not "strongly support" the expansion of the tort. The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except when the discharge violates a clearly mandated public policy.

*Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 630, 478 N.E.2d 1354 (1985).

With the above principles in mind, this Court now examines the sources which Plaintiffs assert articulate a public policy which their termination allegedly contravened.

## B. Potential Sources of Public Policy

### 1. Illinois Nursing Act of 1987

In an effort to establish that they fall within the "whistleblower" exception, Plaintiffs maintain they were reporting a violation of the Illinois Nursing Act of 1987. The Act states in relevant part:

The Department may, upon recommendation of the Board, refuse to issue or to renew, or may revoke, suspend, place on probation, reprimand, or take other disciplinary action as the Department may deem appropriate with regard to a license for any one or combination of the causes set forth in subsection (b) below. . . .

Grounds for disciplinary actions include the following:

Willfully or negligently violating the confidentiality between a nurse and a patient except as provided by law.

225 ILCS 65/10–45(21).

Plaintiffs point to another section of the Act which provides that "*any person, including a firm, association or corporation* who intentionally violates any provision of the Act is guilty of a Class A misdemeanor." 225 ILCS 65/10–5(*o*) (1998 version) (formerly 225 ILCS 65/6(*o*)). Therefore, Plaintiffs assert that under the plain language of the statute, IBP's videotaping of the nurse's office was at least potentially

criminal under Illinois law. This Court agrees.

While a strong argument can be made, and is made by IBP, that the portion of the Act addressing confidentiality contemplates only "disciplinary action," this Court is bound by the express language of the statute which appears to extend criminal liability to all portions of the statute. While the reference to "disciplinary action" seems to indicate administrative action only, the all encompassing wording of § 10–5(o) would clearly contemplate that the items contained in the "disciplinary" section could result in conviction of a Class A misdemeanor. Therefore, if the Defendant did "willfully...violate the confidentiality between nurse and patient," then said conduct could qualify as an intentional violation of "any provision" of the Act and be a crime under Illinois law.

Here, the statute provides for two somewhat parallel remedial measures. That is, authorities can pursue disciplinary action against the offending party and criminal prosecution can be commenced against any person or corporation who intentionally violates the Act. As for IBP's argument that the Act does not cover its conduct because it is not a nurse,[2] criminal liability is extended to "any person, including a firm, association or corporation" who violates the provisions of the Act. Accordingly, it would appear that the disclosure of confidential information by a non-nurse could be criminal.

### 2. *Medical Patient Rights Act (MPRA) under 410 ILCS 50/1 et seq.*

Plaintiffs also claim they fall within the "whistleblower" exception as they reported violations of the MPRA by IBP to IBP. The MPRA establishes "... the right of each patient ... to privacy and confidentiality of records except as otherwise provided by law." 410 ILCS 50/3, § 3(a). Defendants claim that this statute is not applicable because the employees who en-

tered the nurses' office are not "patients" and IBP is not a "Health Care Provider, Health Services Corporation, or Insurance Company" within the meaning of the MPRA. These terms are defined in the statute.

> "Patient" means any person who received or is receiving medical care, treatment or services from an individual or institution licensed to provide medical care or treatment in this state.

410 ILCS 50/2.01

Health Care Provider is defined as:

> "... any public or private facility that provides, on an inpatient or outpatient basis, preventive, diagnostic, therapeutic, convalescent, rehabilitation, mental health or mental retardation services, including general or special hospitals, skilled nursing homes, extended care facilities, intermediate care facilities and mental health centers."

410 ILCS 50/2.03

It therefore is clear to this Court that the employees that received treatment at the IBP plant would be considered a patient under the statute. Simply, the employees were persons who were receiving medical treatment from licensed nurses. Likewise, IBP would also be considered an institution which provides such care. Accordingly, like the Illinois Nursing Act, the MPRA evidences a source of public policy.

### 3. *Privileged Communications Under 735 ILCS 5/8–802*

Plaintiffs' Amended Complaint also claims that a public policy is articulated in the Illinois statute which makes certain communications between healthcare workers and their patients privileged. The statute provides:

> No physician, surgeon, psychologist, nurse, mental health worker, therapist, or other healing art practitioner (referred to in this Section as "healthcare

---

**2.** Although the Act does not specifically define "nurse," it does define "practical nurse" and "registered nurse" as "a person who is li-

censed as a practical nurse under this act." 225 ILCS 65/5–10 (h) and (*l* ).

practitioner") shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally serve the patient . . . .

735 ILCS 5/8–802.

The portion of the statute Plaintiffs are relying on is that *no nurse shall be permitted to disclose any information.* IBP is not a nurse, or for that matter IBP is also not a physician, surgeon, psychologist, mental health worker, therapist, or other healing art practitioner. Accordingly, this statute has little relevance.

More importantly, this statute was declared unconstitutional in *Best v. Taylor Machine Works*, 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057 (1997), (declaring Illinois Tort Reform Act unconstitutional). Accordingly, this Court is at a loss to see how this statute serves as an indication of public policy.

### 4. Unauthorized Videotaping and Eavesdropping Statutes

■ The Illinois legislature has made it unlawful to videotape another person without that person's consent in "a restroom, tanning bed, or salon." 720 ILCS 5/28–1. Defendant also points out that Illinois' only statute which addresses videotaping is limited to situations not present today. The Court only looks past the express language of a statute when it is ambiguous or where a literal interpretation would lead to an "absurd result or thwart the purpose of the overall statutory scheme." *United States v. Hayward*, 6 F.3d 1241, 1245 (7th Cir.1993). In the instant case, the Court finds the wording of the statute to be unambiguous. Accordingly, Illinois' unauthorized videotaping statute is not a source of public policy relevant to the facts presented today.

Likewise, Illinois' eavesdropping statute is also inapplicable. The eavesdropping statute makes it illegal to use an "eavesdropping device to hear or record all or any part of any conversation" unless certain requirements are met. 720 ILCS 5/14–2. The statute defines an "eavesdropping device" as "any device capable of being used to hear or record oral conversations. . . ." 720 ILCS 5/14–1. Here, Plaintiffs concede that the video camera did not have audio capabilities. Accordingly, like the unauthorized videotaping statute, the eavesdropping statute does not implicate a clearly mandated public policy which covers the situation at hand.

### 5. Privacy Rights Under the Illinois Constitution

Finally, Plaintiffs point to the Illinois Constitution as a source of public policy. Article I, § 12 states:

Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly.

In Plaintiffs' Response, however, they make no mention of this provision and do not articulate how such is indicative of public privacy. Nevertheless, this Court is confident that Article 1, § 12, by itself, does not state a public policy applicable to the case sub judicia.

### C. Is a Perceived Violation Of Criminal Law Sufficient?

■ Even if this Court were to find that neither the MPRA nor the INA criminalized the complained of conduct, a perceived violation is sufficient in Illinois according to binding Seventh Circuit authority. That is, even assuming the videotaping was not criminal, it was "apparently criminal" and as such is sufficient. Plaintiffs cite to *Belline v. K–Mart Corp.*, 940 F.2d 184 (7th Cir.1991), for the proposition that conduct does not actually have to be criminal, as long as it is apparently criminal.

Belline, a former employee of K–Mart, alleged that he was fired in retaliation for reporting to management suspicious behavior of a co-employee. Specifically, Belline witnessed one manager, Dobberke,

release merchandise to a charity without following the procedures established by K–Mart; i.e., it appeared to Belline that Dobberke was stealing. K–Mart, *inter alia*, claimed that Dobberke's activities may not have been illegal—but that Dobberke was just not complying with K–Mart policy. The Seventh Circuit rejected this argument:

> Yet an employee's retaliatory discharge claim should not turn on the happenstance of whether the irregular conduct she reports is actually criminal. Public policy favors the exposure of *apparently* criminal activity. That the questionable conduct may later prove to be authorized and therefore legitimate is not dispositive. Admittedly, this is a close case since Dobberke's removal of the goods might actually prove to be an authorized contribution to a charitable organization. We think the apparent illegality of the acts Belline reported, however, is sufficient for him to survive summary judgment.

*Id.* at 188–89 (emphasis in original).

 In the instant case, Plaintiffs have supplied evidence that they believed the use of the concealed camera was criminal. Moreover, this Court must conclude that it was not facially unreasonable for Plaintiffs to think that the presence of a concealed camera in the vicinity of a medical examination room might be criminal, given the ubiquity and variety of eavesdropping, wiretapping, and privacy laws, and in particular the Illinois Eavesdropping Statute.

### D. Reporting Requirements

Finally, Defendant urges this Court to conclude that summary judgment should be granted because Plaintiffs failed to report the "improper" conduct to someone outside of IBP. Again, this Court is bound by *Belline*. There, while noting that at least one court in Illinois has held that an employee fired for reporting criminal activity to the employer (and not to an outside source) did not state a claim for retaliatory discharge, the *Belline* court concluded:

> [P]ublic policy, as well as state law, favors an approach that would allow dutiful employees who report wrongdoing to their employers to bring a retaliatory discharge claim.

*Id.* at 187.

As it is evident from the record that Plaintiffs did indeed report the "wrongdoing" to IBP management, the fact that they did not report such to an outside source does not compel judgment in favor of Defendant.

### Conclusion

For the above reasons, Defendant's Motion for Summary Judgment is DENIED.