*In re* ADOPTION OF JENNIE LYNN RICHARDS.—(EDWARD BROUGHTON *et al.*, Petitioners-Appellees, *v.* TERRY FOWLER, Respondent-Appellant.)

First District (1st Division)    No. 81-1155

Opinion filed February 8, 1982.

Katz, Hirsch, Wise & Colky, Ltd., of Chicago (Russell J. Hirsch, of counsel), for appellant.

James A. Palmisano, of Chicago, for appellees.

JUSTICE GOLDBERG delivered the opinion of the court:

This case arises from the petition of Edward and Betty Broughton (petitioners) for the adoption of Jennie Lynn Richards. After extensive hearings the trial court found the natural mother, Terry Fowler (respondent) an unfit parent under the Adoption Act (see Ill. Rev. Stat. 1979, ch. 40, par. 1501(D)), and terminated her parental rights (see Ill. Rev. Stat. 1979, ch. 40, par. 1507(B) (j)). Respondent appeals.

Jennie Lynn Richards was born on January 16, 1975. Danny Brough-

ton is the undisputed natural father, although respondent's husband at the time, Russell Richards, is the putative father. Danny Broughton was convicted of aggravated battery and sent to prison in December of 1974. In February of 1975, he received a letter from respondent stating the baby was "driving me crazy."

Respondent went to a counselor and on February 21, 1975, took Jennie to the Cradle Society in Evanston. Respondent signed a "Request for Nursery Care" and Jennie remained in the custody of the Cradle Society. On March 11, 1975, respondent returned to the Cradle Society and signed a "Final and Irrevocable Surrender for the Purpose of Adoption." Danny Broughton received a similar document while he was still incarcerated. He refused to sign it and requested that his parents, petitioners, take custody of the child. Thereafter, on March 28, 1975, respondent once again returned to the Cradle Society, this time in the company of petitioner, Betty Broughton. Respondent removed Jennie from the custody of the Cradle Society and placed her in the care of petitioners. Since March 28, 1975, Jennie has remained in the custody of petitioners except for a period of either 9 or 23 days.

Danny Broughton was released from prison in July of 1976. He and respondent dated a few times over the next two years. On or about July 14, 1978, Danny Broughton and respondent lived together in a basement apartment in the house where petitioners lived. On July 21, 1978, Danny and respondent married. Approximately three days later respondent left. She returned in late November and she and Danny moved into an apartment on Winthrop Avenue, where they resided for approximately two weeks.

Thereafter the testimony is conflicting. Respondent testified Jennie lived with her and Danny in their apartment on Winthrop Avenue from December 2, 1978, to December 14. On that date respondent was admitted to a hospital where she stayed for several days. According to respondent, Jennie then stayed with respondent's mother in Des Plaines until December 25, 1978, when Jennie was removed forcibly by Danny.

Witnesses for petitioners dispute respondent's testimony. They testified Jennie never lived in the apartment on Winthrop. From December 2 through December 13, Jennie was still at the home of petitioners. Petitioners admit Jennie did stay at the home of respondent's mother from December 14 to December 25. Danny Broughton testified he brought Jennie to his mother-in-law's home, without the permission of petitioners, to stay only a single night. However, Jennie was kept there without his or petitioners' permission until Danny "brought" her home on December 25, 1978.

Danny Broughton, petitioners, and other witnesses also testified that respondent never inquired about the well being of Jennie, never wrote

letters or cards, never made visits specifically to see Jennie, and never contributed to her support. Petitioners contend respondent only saw Jennie a very few times between March 28, 1975, and December 2, 1978, and was never alone with Jennie during that entire period.

In addition, petitioners introduced a letter written by respondent to petitioner Betty Broughton. The letter accompanied a "Record of Birth" for Jennie, and stated that petitioners would need the certificate to "change the baby's last name," and that respondent hoped Danny "finds somebody to help him raise Jennie." Two acquaintances of respondent also testified to conversations in which respondent expressed her intent neither to raise Jennie nor to have custody of her.

Respondent denied those conversations and testified she never intended permanently to relinquish custody of Jennie. Respondent claims she took Jennie to the Cradle Society and put her in the custody of petitioners simply because she was confused and unemployed. She did not realize the significance of the adoption surrender she signed on March 11, 1975. Respondent also testified she went to visit Jennie frequently while Jennie lived with petitioners. Respondent asserted her visitations were limited only because she was threatened and intimidated by Danny and petitioners. Respondent testified Danny threatened to kill her if she tried to see Jennie. She also stated she was afraid of Danny and married him only because she believed Jennie could live with them.

The trial court held the respondent was an unfit parent on the grounds she did not "maintain a reasonable degree of interest, concern or responsibility as to the child's welfare" (Ill. Rev. Stat. 1979, ch. 40, par. 1501(D)(b)), and she abandoned the child (Ill. Rev. Stat. 1979, ch. 40, par. 1501(D)(a)). On appeal, respondent contends she was not found to be an unfit parent by the requisite degree of clear and convincing evidence, and the trial court committed reversible error in not allowing evidence of respondent's conduct subsequent to the date petitioners filed their petition for adoption.

Respondent is correct that to terminate the parental rights of a biological mother she must be found an unfit person by clear and convincing evidence. (See, e.g., In re Bredendick (1979), 74 Ill. App. 3d 946, 953, 393 N.E.2d 675.) In the case at bar, petitioners have amply met that requirement. Although proof of unfitness must be clear and convincing, the finding of unfitness is a question of fact and the decision of the trial court "should not be disturbed on appeal unless against the manifest weight of the evidence * * *." In re Bentsen (1980), 90 Ill. App. 3d 269, 273, 412 N.E.2d 1167.

Respondent claims her attempts to visit Jennie were frustrated by petitioners. Therefore, she urges, her admittedly limited contacts with Jennie are not evidence of abandonment or of a lack of interest in the

child. This court has held that official conduct of the Department of Children and Family Services, as custodian of the child, which explicitly interferes with the parent's ability to visit the child, may mitigate the parent's lack of contact with the child, for the purposes of determining unfitness. (See *In re Overton* (1974), 21 Ill. App. 3d 1014, 1019, 316 N.E.2d 201.) However, the mere allegation of "threats" by the child's grandparents as custodians, is not sufficient to excuse a virtually complete lack of contact between a parent and child over a period of several years. See *Freeman v. Settle* (1979), 75 Ill. App. 3d 799, 393 N.E.2d 1385.

In the case at bar, the record is replete with contradictory testimony. The able trial judge was in the best position to evaluate the demeanor of the witnesses and to determine their credibility. *In re Ice* (1976), 35 Ill. App. 3d 783, 786, 342 N.E.2d 460.

■■ The record discloses clear and convincing evidence upon which the trial court could find respondent failed to exhibit sufficient interest in the child to be considered a fit parent. There is no dispute respondent relinquished custody of Jennie less than five weeks after she was born. At the very most, respondent had only minimal contact with the child, and made no discernable effort to regain custody of Jennie for approximately four years. In addition, there is the executed surrender for adoption, and the letter respondent wrote to petitioners indicating her consent to their permanent custody of Jennie. The judgment of the trial court finding respondent an unfit person because she failed "to maintain a reasonable degree of interest, concern or responsibility" is clearly and convincingly supported by the manifest weight of the evidence, and accordingly should be affirmed. Because we have determined there is sufficient evidence to sustain the finding of unfitness based on failure to maintain a reasonable degree of interest, concern or responsibility for the child, we need not address the trial court's supplemental finding of abandonment. See *Freeman v. Settle* (1979), 75 Ill. App. 3d 799, 801.

Respondent also contends the trial court committed reversible error in not allowing evidence of respondent's behavior subsequent to the date petitioners filed their petition for adoption. Counsel for respondent presented an offer of proof to the effect that after January 22, 1979, respondent retained legal counsel and secured court ordered visitation rights. Also, after that time respondent has visited Jennie every weekend. The court held this evidence irrelevant to the central issue which was respondent's fitness at the time the petition for adoption was filed.

Respondent cites two cases, *In re Gibson* (1975), 24 Ill. App. 3d 981, 322 N.E.2d 223, and *In re Moriarity* (1973), 14 Ill. App. 3d 553, 302 N.E.2d 491, for the proposition that the parent's behavior subsequent to the filing of the adoption petition is relevant to the determination of fitness. However, in those cases we merely referred to evidence already in the record,

which was not objected to by the opposing party. We did not adjudicate the propriety of allowing such evidence to be introduced. In fact, in *Moriarity*, we specifically declined to "consider, as the trial court did, that evidence pertaining to the period following the filing of the unfitness petition." 14 Ill. App. 3d 553, 556.

■■■ The trial "court's determination that evidence is irrelevant is largely within the discretion of the court, and its ruling should not be reversed absent a clear abuse of discretion." (*Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 1018, 388 N.E.2d 770.) This flexible rule of reason is a sufficient guideline for determination of the propriety of receiving evidence relating to the period after filing of the petition. In our opinion, the introduction of such evidence should be evaluated and decided on a case-by-case basis according to the particular facts of each case. In the case at bar, respondent was not substantially prejudiced by the exclusion of the evidence. The evidence of respondent's lack of interest in the child for the four years prior to the filing of the petition for adoption, is sufficient to sustain a finding of unfitness even with full consideration of the proposed evidence. In fact, we find the additional evidence tendered by respondent is not sufficient to rebut or overcome the remaining evidence above set forth, which strongly supports the judgment appealed from in a clear and convincing manner. Therefore, we do not find a "clear abuse of discretion" in exclusion of the proposed evidence by the trial court.

Accordingly, the judgment appealed from is affirmed.

Judgment affirmed.

CAMPBELL, P. J., and McGLOON, J., concur.