PHILIP G. PASSON, Indiv., *et al.*, Plaintiffs-Appellees, v. TCR, INC., *et al.*, Defendants-Appellants.

Second District   No. 2—92—1161

Opinion filed February 26, 1993.

Arthur G. Jaros, Jr., of Richter & Jaros, and Jerome A. Tatar, of Jerome A. Tatar & Associates, P.C., both of Oak Brook, for appellants.

David F. Rolewick and Catherine M. Massarelli, both of Rolewick & Gutzke, P.C., of Wheaton, for appellees.

JUSTICE GEIGER delivered the opinion of the court:

The defendants, TCR, Inc., and Virginia and James Neece, appeal from a preliminary injunction in favor of the plaintiffs, Philip G. Passon (Passon) and P.G. Passon, Inc. (the plaintiffs). The injunction in question enjoins the defendants from removing Passon as a general partner and managing agent of Kingsland Properties, Ltd., and from interfering in the day-to-day management of the partnership. The defendants argue on appeal that the injunction must be reversed because (1) the trial court failed to conduct an evidentiary hearing prior to the entry of the preliminary injunction; and (2) as a matter of law the partnership agreement expressly allows for Passon's removal and allows for TCR, Inc., to make the day-to-day decisions in the event of disputes between the general partners.

On June 30, 1987, the parties in this case entered into a limited partnership agreement (the agreement) for the purpose of creating Kingsland Properties, Ltd., an Illinois limited partnership (the partnership). Under the terms of the agreement, plaintiff Philip G. Passon and TCR, Inc., are general partners. Also under the agreement, Virginia Neece, both individually and as trustee of a named trust and the estate of Rodney A. Andersen, deceased, are limited partners of the partnership. Also, on September 1, 1990, the partnership and plaintiff P.G. Passon, Inc., entered into a management/brokerage agreement. The agreement states, in relevant part, as follows: "As long as VIRGINIA P. NEECE is a Limited Partner individually, any of the General Partners may be removed by a majority interest of the Limited Partners." The agreement also provides that the partnership interests upon removal of a general partner

are to be computed differently if that partner is removed "for cause."

By a letter dated June 29, 1992, the defendants sent notice to Passon that he was in breach of the agreement and that he had 30 days to cure the breach. By a second letter, dated July 31, 1992, the defendants notified Passon that pursuant to his failure to cure the alleged breach he was being removed "for cause." On September 3, 1992, the plaintiffs filed a petition seeking the entry of a "temporary restraining order, preliminary injunction, permanent injunction, and other relief" in regard to the limited partnership agreement and the management/brokerage agreement to prevent Passon's removal for cause.

The defendants filed a verified answer to the complaint which denied many of the factual allegations in Passon's complaint and set forth three affirmative defenses. In addition, the defendants, through a counterpetition incorporated in their answer, petitioned for the entry of a temporary restraining order (TRO) and preliminary injunction forbidding Passon from disbursing any partnership funds without a cosignature of an officer of TCR, Inc.

On September 15, 1992, the court called this matter to determine whether a "petition for [a] temporary restraining order" should be granted. However, after arguments from counsel, the trial judge stated that the court was going to issue a preliminary injunction and that the court "will set down a time for a hearing on whether or not Mr. Passon was properly removed for cause."

In a hearing on September 16, 1992, before the order now in question was entered, the defendants objected on several grounds. First, the defendants argued that the issue before the court on September 15 was whether a TRO should be issued, not whether a preliminary injunction should be issued. They objected that no preliminary injunction hearing date was set by the court. Second, the defendants objected to the injunction because they had filed a verified answer raising controverted issues of fact, particularly on the issue of irreparable injury, which were not addressed by the court.

The court ruled that the only hearing date necessary was "on the issue of whether or not the injunction should be made permanent." Thereafter, the defendants objected again to the entry of the preliminary injunction without notice of or opportunity to present any testimony.

Later that same day, after the entry of the preliminary injunction, the defendants filed a motion to dissolve. Also, Passon filed a response to the defendants' affirmative defenses. The time stamp

appearing on Passon's response indicates that it was filed after the September 16 order was entered by the court. There is no indication that Passon's response was before the court when the preliminary injunction was entered.

On September 17, 1992, the court held a hearing on the defendants' motion to dissolve the injunction. Therein, the trial judge stated that he had looked at the transcripts of the earlier proceedings and found that the defendants did not ask for an evidentiary hearing. The court continued by saying that "[t]here was some discussion on the record by [Passon's counsel] as to whether or not the court wished to conduct an evidentiary hearing and I said I believe [*sic*] it was appropriate, and what I was referring to, of course, was the voluminous pleadings, with attachments, which [both parties] provided, to proceed on the four corners of the partnership agreement and the other documents and the allegations of the complaint [that] were appropriate, to make a determination." The court also stated that the defendants' counsel "never said at that point [that they] demand a hearing," and "[t]here is no indication that [they] wanted an evidentiary hearing." The court further explained that it tried to preserve the status quo so that an arbitrator, as called for in the partnership agreement, would have something left to resolve. The court denied the motion to dissolve. This appeal followed.

We first address the issue of whether the court erred in entering a preliminary injunction without first conducting an evidentiary hearing. Passon asserts, initially, that this issue was waived by the defendants failing to request such a hearing prior to the September 16, 1992, order. In support of this argument, Passon notes that the defendants did not request an evidentiary hearing prior to the court's ruling on September 15, and he notes that the trial court on September 17 found that the defendants did not request an evidentiary hearing prior to the entry of the injunction.

The defendants acknowledge that they did not ask for an evidentiary hearing before the trial court's ruling on September 15. They argue, however, that on that date, by the trial court's own words, they were before the court to decide whether "[a] temporary restraining order" should be issued and therefore they had no right to an evidentiary hearing at that point. The defendants further note, contrary to the court's September 17 findings, that prior to the entry of the preliminary injunction on September 16, 1992, they notified the court that the matter had been set for a ruling on the application for a TRO and not for a ruling on a preliminary injunction, and they specifically objected to the entry of the preliminary

injunction without notice of a preliminary injunction hearing and without the taking of testimony. Additionally, the defendants note that they raised this issue in their motion to dissolve the injunction.

■ The classification of an order as a TRO or a preliminary injunction will be determinative of the type of hearing required for the issuance of the order. (See *Peoples Gas Light & Coke Co. v. City of Chicago* (1983), 117 Ill. App. 3d 353, 355.) Upon an application for a preliminary injunction, an evidentiary hearing is normally required where a verified answer has been filed denying material allegations in the complaint. (117 Ill. App. 3d at 355.) However, a hearing on a motion for a TRO is a summary proceeding, and even if the defendant files a verified answer, the court still proceeds in a summary fashion, hearing only arguments on the motion for the TRO. See *Lawter International, Inc. v. Carroll* (1982), 107 Ill. App. 3d 938, 939-40.

■ Given that the court began the proceedings on September 15, stating that it was to decide whether a TRO should be issued, we cannot find that the defendants waived the evidentiary hearing by failing to request one there; the defendants were not entitled to an evidentiary hearing if the court was merely determining whether a TRO should be issued. (See *Lawter*, 107 Ill. App. 3d at 939-40.) The record is clear that when the proposed preliminary injunction order was submitted by the plaintiff to the court on September 16, the defendants objected to its entry without notice or an opportunity to present testimony. Based on this record and despite the court's finding on September 17, 1992, that the defendants never requested an evidentiary hearing, we find that the defendants have not waived this issue for review.

Passon also argues that an evidentiary hearing was not required in this instance because the defendants' verified answer did not deny material allegations in the complaint. (See *Peoples Gas*, 117 Ill. App. 3d at 355.) The defendants argue that their verified answer denies material allegations in Passon's complaint. A partial list of disputed factual issues raised in the defendants' answer include: (1) whether the partnership, under Passon's management, has defaulted on a loan; (2) whether Passon materially breached the partnership agreement; (3) whether Passon is responsible for the day-to-day operations of the partnership; (4) whether the defendants wrongfully attempted to "force Philip G. Passon from the Partnership" or whether Virginia Neece was operating under her right to remove Passon pursuant to the agreement; (5) whether the removal of Passon would be detrimental to the day-to-day management and

operation of the partnership or would diminish the value of the partnership property; (6) whether Passon's guarantees of partnership loans would cause him irreparable damage; and (7) whether there will be an unjust loss of value of Passon's partnership interest if he is removed from the partnership.

■ This is not an instance where the "crux" of the plaintiff's complaint was uncontroverted by the defendant (see *Brooks v. La Salle National Bank* (1973), 11 Ill. App. 3d 791, 798), or where the defendant refused to present evidence of the disputed facts when given an opportunity by the court (see *SSA Foods, Inc. v. Giannotti* (1982), 105 Ill. App. 3d 424, 428). We find that the disputed facts raised in the defendants' answer controvert several material allegations that address the very necessity of equitable action alleged in Passon's complaint. For example, whether the removal of Passon would be detrimental to the partnership or would diminish the value of the partnership property is an essential issue in this case as it directly relates to the requirement that there would be irreparable injury and that there exist no adequate remedies at law. (See *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1978), 61 Ill. App. 3d 636, 642.) Therefore, we do not find that inadequate denials in the defendants' answer obviate the necessity for the court to conduct an evidentiary hearing.

Passon argues in the alternative that despite its "Order for Preliminary Injunction" label, the court's order here is in fact a temporary restraining order. As such, it did not require an evidentiary hearing prior to its issuance. He asserts in this regard that the order's effect and the apparent intention of the trial court's order, despite its label, is the functional equivalent of a TRO. Therefore, he argues, an evidentiary hearing was not necessary.

■ We disagree. A TRO is an emergency remedy issued to maintain the status quo until a hearing can be held on an application for a preliminary injunction. (*Peoples Gas*, 117 Ill. App. 3d at 355.) Whereas, the purpose of a preliminary injunction is to maintain the status quo until the case is disposed of on the merits. 117 Ill. App. 3d at 355.

■ The trial judge here refused, when asked by the defendants, to set the matter for preliminary hearing. He stated that the matter would be set for a "hearing date on the issue of whether or not the injunction should be made permanent." The trial judge also stated that a date would be set to determine if Passon was "properly removed for cause." The judge's intent is inconsistent with the purpose of a TRO, which is merely to maintain status until a hear-

ing can be held on whether to grant a preliminary injunction. We find that the trial judge appears, rather, to have intended to maintain the status quo until the case could be disposed of on the merits. Therefore, we find no merit in Passon's assertion that the preliminary injunction issued by the court was in effect a TRO.

Here, the court improperly issued a preliminary injunction without the procedural safeguards that are required when a party is asking for such extraordinary relief. If a court wishes to properly enter a preliminary injunction after a defendant files an answer which disputes material factual issues, the court must hold an evidentiary hearing. (See *Peoples Gas*, 117 Ill. App. 3d at 355.) Furthermore, the court is required to determine by a preponderance of the evidence that: (1) the movant possesses a certain and clearly defined right that requires protection; (2) there would be immediate and irreparable injury if it is denied; (3) there exists no adequate remedy at law; and (4) there is a probability of ultimate success on the merits. *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1978), 61 Ill. App. 3d 636, 642.

Since no evidentiary hearing was held before the entry of this preliminary injunction, we find that the court abused its discretion in entering the order. (See *Peoples Gas*, 117 Ill. App. 3d at 357.) Pursuant to this determination, we do not find it necessary to reach the merits of the defendants' other grounds for appeal.

Therefore, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

DOYLE and QUETSCH, JJ., concur.