# Illinois Official Reports

## Appellate Court

---

**In re T.M.H., 2019 IL App (2d) 190614**

---

| | |
|---|---|
| Appellate Court Caption | *In re* T.M.H., a Minor (Arthur S. and Tiffany S., Petitioners-Appellees, v. Paul H., Respondent-Appellant). |
| District & No. | Second District<br>No. 2-19-0614 |
| Filed | November 19, 2019 |
| Decision Under Review | Appeal from the Circuit Court for Du Page County, No. 18-AD-0061; the Hon. Robert G. Gibson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Joseph P. O'Brien, of Opal O'Brien LLC, of Wheaton, for appellant.<br><br>Henry D. Kass, of Mirabella Kincaid Frederick & Mirabella, LLC, of Wheaton, for appellees. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Bridges concurred in the judgment and opinion. |

**OPINION**

¶ 1 Respondent, Paul H., appeals from an order of the circuit court of Du Page County, entering a preliminary injunction enjoining him from any contact or visitation with his minor biological child pending adjudication of a petition for related adoption. For the following reasons, we affirm.

¶ 2                                        I. BACKGROUND

¶ 3 The record demonstrates that Paul H. and Tiffany S. are the biological parents of T.M.H., who was born on September 9, 2011. They were never married; Paul was named on the birth certificate. On August 13, 2012, Paul filed a complaint to determine parentage in the circuit court of Will County. Paul was initially granted supervised parenting time. On October 17, 2013, the parties entered into an agreed order, which set forth an unsupervised-parenting-time schedule for Paul. However, on November 14, 2014, the Will County circuit court entered a parenting order that reserved parenting time for Paul in light of his incarceration at that time and provided that Paul may petition the court for visitation. The order also prohibited Paul from having contact with Tiffany until further order.

¶ 4 Tiffany married Arthur S. on June 6, 2015. On July 9, 2018, Tiffany and Arthur filed, in the circuit court of Du Page County, a petition for related adoption of T.M.H. The adoption trial court appointed a guardian *ad litem*.

¶ 5 Subsequently, on October 17, 2018, Paul filed in the Will County parentage case a petition to reinstate parenting time and a motion to transfer the case to the circuit court of Du Page County. Paul stated in the petition that he had been incarcerated for approximately two years and was released in July or August 2016. The parentage case was transferred to the circuit court of Du Page County. At that point, Tiffany and Arthur moved in the parentage case to consolidate the parentage and adoption cases (now both pending in the circuit court of Du Page County) and transfer the matter to the adoption trial court. On March 21, 2019, the parentage trial court denied the motion and appointed a guardian *ad litem* in the parentage action. Tiffany and Arthur unsuccessfully moved for a substitution of judge as of right before the parentage trial court. Ultimately, the parentage trial court continued all pending matters in the parentage action to July 1, 2019, for status, including Paul's petition to reinstate parenting time as well as his subsequently filed motions to establish a child-support account and to lift any communication restrictions between him and Tiffany and require Tiffany to share information regarding T.M.H.

¶ 6 Meanwhile, in the adoption proceeding, on April 26, 2019, the guardian *ad litem* filed, pursuant to the trial court's order, a memorandum of law regarding case priority. The memorandum cited section 20 of the Adoption Act (750 ILCS 50/20 (West 2018)), which provides that "Proceedings under this Act shall receive priority over other civil cases in being set for hearing." According to the guardian *ad litem*'s memorandum, a parentage case is a civil case, and the adoption case would thus take priority pursuant to this provision.

¶ 7 Next in the adoption case, on May 9, 2019, Paul filed a motion to stay the adoption proceeding. On May 14, 2019, Tiffany and Arthur filed a motion to stay the parentage action or, alternatively, a verified petition to enjoin visitation. Their petition alleged that Paul, in the past, had (1) taken T.M.H. and his belongings from Tiffany and refused to return him or advise

of his whereabouts, (2) repeatedly threatened Tiffany that he would take T.M.H. from her, (3) threatened that he would "take out" Tiffany, and (4) stated that he carries a knife and possibly a gun and threatened that one day he would "take out" Tiffany and her family and take T.M.H. to Mexico. Tiffany and Arthur also alleged that Paul had pled guilty to violating an order of protection by coming to Tiffany's place of employment and pled guilty to a felony count of harassing a witness (Tiffany). Tiffany and Arthur further alleged that, as a condition of Paul's probation for harassing a witness, Paul was ordered not to have any contact with Tiffany.

¶ 8 On June 20, 2019, following a lengthy discussion on the issue of case priority and the two pending matters (Paul's motion to stay the adoption proceeding and Tiffany's and Arthur's motion to stay the parentage action or, alternatively, petition to enjoin visitation), the adoption trial court stated that the two matters should be heard in conjunction with the issue of case priority. The adoption trial court entered an order continuing the hearing to July 1, 2019, and providing that "[e]ither party may file a responsive pleading within 7 days." Neither party filed any response.

¶ 9 On July 1, 2019, following the parties' arguments, the adoption trial court granted Tiffany's and Arthur's petition to enjoin visitation, entered a preliminary injunction enjoining Paul from any contact or visitation with T.M.H. until the adoption petition is adjudicated, and scheduled trial on the adoption petition. The adoption trial court rejected Paul's argument that an evidentiary hearing was required, given the lack of any response by Paul to the petition to enjoin visitation.

¶ 10 The transcript of the hearing reflects that the court reviewed the requisite elements for a preliminary injunction and found that Tiffany and Arthur had met their burden on all elements. In doing so, the court stated as follows:

"And on this record, the Court finds that there [are] grounds here and there have been the factors established to grant Count Two, the petition to enjoin visitation, preliminary injunction. And it asks to enjoin [Paul] from exercising any visitation with T.M.H. whatsoever and enjoin [Paul] from otherwise having any contact with T.M.H. whatsoever.

The elements are an ascertainable claim for relief or protectible [*sic*] interest. That's a threshold issue. And there is an ascertainable right and need of protection.

Likelihood of success on the merits [is] sometimes misinterpreted. It's only necessary that the plaintiff raise a fair question as to the likelihood of success on the merits.

Irreparable harm in the absence of injunctive relief, that there would be irreparable harm and inadequate remedy at law, such as money damages.

And then balancing the equities.

And I'm not going to go through all the facts that have occurred. This goes back many years, involving convictions for felony matters, involving orders of protection and a long history here.

But on this record, the Court finds that Count Two, petitioner has sustained its burden and that petition will be granted.

Count One, the motion to stay the parentage cause of action is denied, although as a practical matter with Count Two being granted, there's probably limited things that

could occur in the parentage cause of action with the enjoining of any visitation or contact between [Paul] and [T.M.H.]"

¶ 11　　Paul's counsel sought clarification of the nature of the injunctive relief, stating, "my understating is that the first step would be a restraining order that would be entered for 21 days, and then there'd be a hearing on the preliminary injunction subsequent to that." The trial court responded that "[t]he relief that's set forth in Count Two is being granted" and that "there's no mandatory requirement that there be a temporary restraining order before a preliminary injunction is entered." Neither the transcript of the hearing nor the trial court's written order reflects a stated ruling on Paul's pending motion to stay the adoption proceeding.

¶ 12　　Notably, after the hearing in the adoption proceeding, the record demonstrates that the parties appeared for the scheduled status hearing before the parentage trial court. The guardian *ad litem* there reported on the status of the case. He stated that (1) T.M.H. was not aware that Paul is his biological father, (2) any introduction would require professional assistance and would be a lengthy process, and (3) there was thus no urgency to commencing the process. The parentage trial court continued the matter for a status following trial on the adoption petition.

¶ 13　　Paul timely appealed, and the parties subsequently filed several motions. On August 15, 2019, we denied Paul's emergency motion to stay the trial court's July 1, 2019, order pending appeal. We also denied Paul's motion to expand the record on appeal to include the entire record in the parentage case. However, we granted Paul's emergency motion for leave to file an amended notice of interlocutory appeal and denied Tiffany's and Arthur's motion to dismiss the interlocutory appeal.

¶ 14　　　　　　　　　　　　　　II. ANALYSIS

¶ 15　　Paul raises a myriad of objections to the adoption trial court's ruling. Tiffany and Arthur contend that we lack jurisdiction to address several of Paul's arguments, as the arguments involve issues that were not raised in Paul's amended notice of interlocutory appeal. See Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017) (the notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court"); *Fitch v. McDermott, Will & Emery, LLP*, 401 Ill. App. 3d 1006, 1014 (2010) ("[W]hen an appeal is taken from a specified judgment, the appellate court acquires no jurisdiction to review other judgments or parts of judgments that are not specified in or inferred from the notice of appeal."). As set forth below, with the exception of Paul's argument that the adoption trial court erred in refusing to stay the adoption proceeding, all of Paul's arguments boil down to a challenge to the issuance of the preliminary injunction. Paul's amended notice of interlocutory appeal explicitly appealed the July 1, 2019, order issuing the preliminary injunction. Thus, we have jurisdiction to review Paul's arguments regarding the propriety of the preliminary injunction. See Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017).

¶ 16　　However, Paul's challenge to the adoption trial court's purported ruling, refusing to stay the adoption proceeding, is not properly before this court. That is because the record does not reflect that the trial court in fact ruled on the motion, and there was no request for any clarification as to whether the motion had been ruled on. Thus, there is no such ruling to review. We nevertheless note that Paul's arguments with respect to this issue are intertwined with his challenge to the preliminary injunction. Thus, as set forth below, we reject Paul's arguments in any event.

¶ 17    We turn to Paul's challenge to the preliminary injunction. A preliminary injunction may be granted where the movant establishes a clearly ascertained right in need of protection, irreparable harm without the injunction, no adequate remedy at law, and the likelihood of success on the merits. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 365-66 (2001). A preliminary injunction will not be overturned absent an abuse of discretion. *Id.* at 366. An abuse of discretion occurs when no reasonable person would take the trial court's view. *Garlick v. Bloomingdale Township*, 2018 IL App (2d) 171013, ¶ 25.

¶ 18                    A. Lack of Initial Temporary Restraining Order

¶ 19    Initially, Paul contends that the trial court improperly issued a preliminary injunction without first entering a temporary restraining order. There is no such requirement stated in section 11-101 (temporary restraining orders) or 11-102 (preliminary injunctions) of the Code of Civil Procedure (735 ILCS 5/11-101, 11-102 (West 2018)). Paul relies upon *Jurco v. Stuart*, 110 Ill. App. 3d 405, 408 (1982), citing the court's statement that "[t]he first proceeding is the temporary restraining order." However, the court was merely explaining the three-tiered system of injunctive relief—temporary restraining orders, preliminary injunctions, and permanent injunctions—in ultimately holding that a temporary restraining order was improperly allowed to ripen into a preliminary injunction without an evidentiary hearing. *Id.*

¶ 20    Paul likewise relies upon *Bismarck Hotel Co. v. Sutherland*, 92 Ill. App. 3d 167, 175 (1980), citing the court's statement that the "purpose of a temporary restraining order is to preserve the status quo until the court can arrange for a hearing on an application for a preliminary injunction." A review of the case reflects that the court was addressing the fact that the dismissal of a litigant's petition for a temporary restraining order and preliminary injunction was moot in light of the summary judgment entered in the litigant's favor. *Id.* Paul does not explain how these broad propositions support his argument that the trial court here was required to enter a temporary restraining order prior to issuing a preliminary injunction. Accordingly, Paul presents no basis for reversal on this ground.

¶ 21                          B. Lack of Evidentiary Hearing

¶ 22    Paul also argues that reversal is warranted because the trial court failed to hold an evidentiary hearing before issuing the preliminary injunction. "Upon an application for a preliminary injunction, an evidentiary hearing is normally required where a verified answer has been filed denying material allegations in the complaint." *Passon v. TCR, Inc.*, 242 Ill. App. 3d 259, 263 (1993). However, as the trial court pointed out, Paul never filed a response to the verified petition to enjoin visitation, even after the trial court allowed an additional seven days to do so. "Where the defendant does not answer or respond [to a verified complaint for a preliminary injunction], the trial court need not hold a hearing because the sole question is whether the complaint is legally sufficient." *Russel v. Howe*, 293 Ill. App. 3d 293, 296 (1997); see also *SSA Foods, Inc. v. Giannotti*, 105 Ill. App. 3d 424, 428 (1982) ("A party seeking an injunction must establish his right to an injunction by means of oral testimony only if there are contested material facts. Where the essential factual allegations of a complaint are not controverted, no oral testimony is necessary.").

¶ 23    The verified petition to enjoin visitation was explicit in its allegations, including that Paul had in the past taken T.M.H. and refused to advise of his whereabouts, threatened Tiffany that he would take T.M.H. from her, and stated that he carries a knife and possibly a gun and

threatened that one day he would "take out" Tiffany and her family and take T.M.H. to Mexico. The record demonstrates that Paul did not answer these allegations.

¶ 24 Paul contends that his motion to stay the adoption proceeding was an effective denial of the allegations in Tiffany's and Arthur's petition to enjoin visitation. However, Paul's motion to stay the adoption proceeding could not have been deemed a response to the petition to enjoin visitation, as Paul filed the motion six days *before* the petition to enjoin visitation was filed. Moreover, the transcript from the June 20, 2019, hearing (a week prior to the July 1, 2019, hearing at which the trial court entered the preliminary injunction) reflects repeated statements by the trial court that it would allow the parties an opportunity to respond to the respective pending matters. Indeed, the trial court's June 20, 2019, order explicitly provided that "[e]ither party may file a responsive pleading within 7 days." Paul maintains that a response was made optional. The point, however, is that Paul did not opt to file a responsive pleading, and the facts alleged in the verified petition were left uncontroverted. Thus, the trial court did not abuse its discretion in issuing the preliminary injunction without holding an evidentiary hearing.

¶ 25                                    C. Propriety of Preliminary Injunction

¶ 26 As for their substantive positions regarding the propriety of the preliminary injunction, the parties center their arguments on two cases: *In re Adoption of Scraggs*, 125 Ill. 2d 382 (1988), and *J.S.A. v. M.H.*, 384 Ill. App. 3d 998 (2008).

¶ 27 In *Scraggs*, the mother and father divorced, and custody of their minor child was awarded to the mother with reasonable visitation rights to the father. *Scraggs*, 125 Ill. 2d at 384. As the years went by, the mother placed the child with her brother and his wife for various periods of time. *Id.* The father had minimal contact with the child. *Id.* at 385-86. Ultimately, the brother and his wife petitioned to adopt the then-nine-year-old child, who at that point had been in their custody for years. *Id.* at 384. The adoption petition alleged that the parents were unfit and had abandoned the child. *Id.* The brother and his wife also sought injunctive relief to prohibit the father from having contact with the child. *Id.* The grounds for the injunction request were that contact between the father and the child would disrupt family stability and be seriously detrimental to the safety, mental well-being, stability, and health of the child. *Id.* at 385.

¶ 28 The father then filed in the divorce proceeding a petition for a rule to show cause against the mother, requesting that she be held in contempt for failure to allow parenting time. *Id.* The trial court in the adoption proceeding granted a temporary restraining order and, following a hearing, a preliminary injunction prohibiting the father's contact with the child pending the resolution of the father's fitness. *Id.* at 385-86. The trial court found that, due to the age of the child and the length of the separation, irreparable harm would be caused to the child and nothing would be gained if visitation were allowed. *Id.* at 386. The appellate court affirmed. *Id.*

¶ 29 The supreme court reversed, holding that the injunction did not maintain the status quo, as the divorce decree had granted the father reasonable visitation. *Id.* at 388. While it was questionable whether the father actively exercised the right, he attempted to reestablish a relationship with his child and filed an appropriate petition in the divorce proceeding when he was denied visitation. *Id.*

¶ 30 The supreme court also reasoned that the rights of a natural father should be abrogated only in exceptional circumstances after close scrutiny. *Id.* at 389. Nevertheless, the court recognized that situations in a contested adoption proceeding could require such an injunction to protect

the child in light of the overriding consideration of the child's best interests. *Id.* at 387. "For instance, there may be threats of physical harm to the child if he is uncooperative with either the natural parent or adopting parents, or there may be a risk that the child will be abducted if visitation were allowed." *Id.* There were no such threats of violence by the father and no indication that he intended to abscond with the child or posed an immediate threat to the child's mental health, stability, or well-being. *Id.* at 389. The court concluded that, "[t]hough it appears that the child is happy in his present home environment and expressed a desire not to visit with [the father], we do not find sufficient facts establishing that irreparable harm is likely to occur if the injunction is not granted." *Id.* at 389-90. In sum, the court advised that its holding was meant only to dissolve the injunction and had no bearing on the merits of the adoption. *Id.* at 390.

¶ 31 In *J.S.A.*, the parties had an extramarital relationship, and the minor child was thereafter born. *J.S.A.*, 384 Ill. App. 3d at 1001. The mother's husband was named on the birth certificate as the child's father. *Id.* The extramarital relationship continued for a few years after the child's birth, during which time the putative father did not contest the presumed paternity of the mother's husband. *Id.* However, a year after the mother ended the extramarital relationship, the putative father filed a petition to determine the existence of a parent-child relationship, requested visitation, and sought an order for DNA testing to determine the paternity of the child. *Id.* The next month, the mother and her husband filed a petition to adopt the child and a petition to terminate the purported parental rights of the putative father. *Id.* The cases were ultimately consolidated, and the trial court stayed the adoption matter pending the results of DNA testing. *Id.* at 1002. After protracted court proceedings, DNA testing was completed almost five years later and a parentage order was entered, finding the putative father to be the biological father. *Id.* The next month, the trial court denied the father's petition to establish a parent-child relationship and lifted the stay on the adoption action. *Id.* at 1003.

¶ 32 The appellate court dismissed the father's appeal on the grounds that he was barred from pursuing the parentage action and from intervening in the adoption action because he failed to timely register with the Putative Father Registry. *Id.* The supreme court reversed and remanded on this issue. *Id.*

¶ 33 On remand, the appellate court, *inter alia*, held that the stay of the adoption action pending the parentage action should be reinstated. *Id.* at 1005-06. The case was remanded to the trial court to hold a hearing on the father's visitation request. *Id.* at 1011-13. The appellate court further held that the trial court abused its discretion in denying the father's motion for a stay of the adoption proceeding pending resolution of his appeal of the dismissal of his petition to establish a parent-child relationship. *Id.* at 1014. The court reasoned that the stay was necessary to ensure that the father had an opportunity to be awarded rights in the parentage action. *Id.* "If the adoption proceeding advanced before our decision on issues in the appeal of the parentage action, the consequences in the parentage action could be substantial and would potentially serve to deprive [the father] of his rights as [the child's] biological father." *Id.*

¶ 34 Here, Paul relies upon *J.S.A.* to support his argument that the preliminary injunction should be dissolved (and the adoption proceeding stayed) in order to protect his rights as T.M.H.'s biological father—rights that should take priority over the adoption proceeding. He argues that the preliminary injunction, enjoining him from having any contact or visitation with T.M.H., precludes his ability to pursue his petition to reinstate parenting time in the parentage action.

Tiffany and Arthur respond that the facts of this case present the very situation warranting injunctive relief contemplated by the supreme court in *Scraggs*.

¶ 35 While recognizing the inherent rights of Paul as T.M.H.'s biological father, T.M.H.'s best interests are paramount. See *Scraggs*, 125 Ill. 2d at 387. Paul maintains that the trial court failed to consider the best interests of T.M.H. But the record demonstrates that this is precisely what the trial court considered. The uncontroverted allegations in the verified petition to enjoin visitation recounted threats of violence and a risk of abduction if visitation were allowed, including allegations that Paul had in the past taken T.M.H. and refused to advise of his whereabouts, threatened Tiffany that he would take T.M.H. out of the country, and stated that he carries a weapon. Under these circumstances, and in light of the overriding consideration of T.M.H.'s best interests, we are compelled to hold that the trial court did not abuse its discretion in issuing the preliminary injunction enjoining Paul from having any contact or visitation with T.M.H. pending adjudication of the petition for related adoption.

¶ 36 Paul maintains that the trial court failed to set forth the reasons for entry of the preliminary injunction, as required by section 11-101. See 735 ILCS 5/11-101 (West 2018) ("Every order granting an injunction and every restraining order shall set forth the reasons for its entry ***."). The record refutes Paul's argument. At the July 1, 2019, hearing, following extensive argument and discussion, the trial court reviewed the requisite elements for a preliminary injunction and found that Tiffany and Paul had met their burden on all elements. The trial court further explained that, while it was "not going to go through all the facts that have occurred," the case "goes back many years, involving convictions for felony matters, involving orders of protection and a long history here." In turn, the July 1, 2019, order granting the preliminary injunction following the hearing provided that it was granted for the reasons set forth in the record. The order was sufficient under section 11-101 and presents no basis for reversal of the preliminary injunction. See *Brooks v. La Salle National Bank*, 11 Ill. App. 3d 791, 800 (1973) ("We find no merit in defendants' argument that the order was defective because it stated 'for good cause shown' and did not explicitly state the reasons for its issuance. The issues in this case were clear enough so as to obviously apprise the defendants of the chancellor's reasoning in issuing the injunctional order.").

¶ 37 We also reject Paul's argument that, in issuing the preliminary injunction, the trial court gave "too much weight" to the guardian *ad litem* "with respect to the 'priority' issues in this case in the sense that the adoption matter should proceed first." Paul has forfeited this argument by failing to provide any record citations in support. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *U.S. Bank Trust National Ass'n v. Hernandez*, 2017 IL App (2d) 160850, ¶ 30. Our review of the record does not bear out Paul's contention in any event. There is simply nothing in the record to substantiate Paul's position that the trial court placed undue weight on the guardian *ad litem*'s memorandum regarding case priority.

¶ 38 Paul likens the petition to enjoin visitation to a request to restrict parenting time pursuant to section 602.7 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/602.7 (West 2018)). Section 602.7 provides a presumption that both parents are fit and prohibits a restriction on parenting time unless the court finds by a preponderance of the evidence that "a parent's exercise of parenting time would seriously endanger the child's physical, mental, moral, or emotional health." *Id.* According to Paul, the trial court improperly restricted his parenting time without the requisite finding under section 602.7.

- 8 -

¶ 39     Paul states that visitation with T.M.H. was occurring prior to Paul's incarceration. He points out that in 2014 T.M.H. was removed as a protected party from an order of protection that had been in place against Paul. However, the record reflects that, since the entry of the November 14, 2014, parenting order (which reserved the issue of parenting time in light of Paul's incarceration at that time), Paul never pursued parenting time until after the July 9, 2018, filing of the petition for related adoption. Accordingly, the trial court did not restrict Paul's parenting time but, rather, maintained the status quo.

¶ 40     Regardless, Paul argues that the petition to enjoin visitation should have been heard by the trial court in the parentage proceeding, not the trial court in the adoption proceeding. Initially, the record demonstrates that Paul has forfeited this argument by failing to raise it in the trial court. See *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 85. Paul's argument lacks merit in any event. The trial court in the adoption proceeding had jurisdiction to issue the preliminary injunction, notwithstanding the pending parentage proceeding. See *In re Marriage of Schweihs*, 222 Ill. App. 3d 887, 890 (1991) ("Circuit courts have various divisions such as probate and domestic relations, but those divisions are not jurisdictional."). Moreover, the supreme court in *Scraggs* contemplated that a situation in an adoption proceeding could warrant the very relief granted here. *Scraggs*, 125 Ill. 2d at 387.

¶ 41     Paul further argues that reversal is warranted because the preliminary injunction unfairly prejudices him with respect to the determination in the adoption proceeding as to whether his parental rights are ultimately terminated. He cites *In re Gibson*, 24 Ill. App. 3d 981 (1975), and *In re Moriarity*, 14 Ill. App. 3d 553 (1973), for the proposition that it would be reversible error in the adoption proceeding to ignore his "attempts and a potential successful re-unification into the life of his child."

¶ 42     Notably, however, the court in *In re Adoption of Richards*, 104 Ill. App. 3d 406, 409-10 (1982), addressed these cases in holding that it was not reversible error to exclude evidence of a biological parent's parenting time with the child, subsequent to the date of the adoption petition. Rather, evidence of the father's lack of interest in the child for the four years prior to the filing of the adoption petition was sufficient to sustain the finding of unfitness, even if the proposed evidence had been considered. *Id.* at 410. The court there noted the father's improper reliance upon *Gibson* and *Moriarity* for the proposition that a parent's behavior subsequent to the filing of the adoption petition is relevant to the determination of fitness. *Id.* at 409-10. "[I]n those cases[,] we merely referred to evidence already in the record, which was not objected to by the opposing party. We did not adjudicate the propriety of allowing such evidence to be introduced." *Id.* (citing *Gibson*, 24 Ill. App. 3d at 986-87, and *Moriarity*, 14 Ill. App. 3d at 556-57). Likewise, Paul's reliance upon *Gibson* and *Moriarity* is misplaced, and he presents no persuasive argument that he is unfairly prejudiced in the adoption proceeding. In sum, the record demonstrates that the trial court did not abuse its discretion in issuing the preliminary injunction enjoining Paul from any contact or visitation with T.M.H. pending adjudication of the adoption petition.

¶ 43     As a final matter, Tiffany and Arthur request that we not only affirm the preliminary injunction but also order that the parentage action be transferred to and consolidated with the adoption action. The record demonstrates that this was relief that Tiffany and Arthur unsuccessfully sought in a motion filed in the parentage action. This is not an appeal from any ruling in the parentage action; this is Paul's appeal from the adoption trial court's preliminary injunction. Thus, we do not have jurisdiction to grant such relief. See *In re Marriage of Reidy*,

2018 IL App (1st) 170054, ¶¶ 22-23 (the appellate court lacked jurisdiction to review a litigant's challenge to the denial of his motion to consolidate law division complaint into dissolution proceeding). Moreover, Tiffany and Arthur did not file a cross-appeal. Our review is confined to the issues raised by Paul. See *Rathje v. Horlbeck Capital Management, LLC*, 2014 IL App (2d) 140682, ¶ 49 ("A notice of cross-appeal is mandatory for review of a judgment adverse to the appellee."). We disregard Tiffany's and Arthur's request for relief.

¶ 44                                         III. CONCLUSION
¶ 45          For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 46          Affirmed.