2025 IL App (1st) 242519-U
Order filed: March 20, 2025

FIRST DISTRICT
FOURTH DIVISION

No. 1-24-2519

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | Appeal from the |
| | ) | Circuit Court of |
| MYRA STEPHENS, | ) | Cook County |
| | ) | |
| Petitioner-Appellee, | ) | No. 2022 D 8646 |
| | ) | |
| and | ) | |
| | ) | |
| BRADFORD STEPHENS, | ) | Honorable |
| | ) | Bradley Trowbridge, |
| Respondent-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We vacated the order converting a TRO into a preliminary injunction and remanded for an immediate evidentiary hearing.

¶ 2    Petitioner-appellant, Myra Stephens, filed for a dissolution of her marriage to respondent-appellee, Bradford Stephens. Petitioner subsequently brought an emergency petition for a temporary restraining order (TRO) and preliminary injunction prohibiting respondent from selling, liquidating, or otherwise disposing of his retirement accounts and the restricted stock units (RSUs) he had received from his employer and from taking any loans or incurring additional debt for the marital estate. The court granted the emergency petition for a TRO and set the matter for a hearing

on the petition for a preliminary injunction. About three months later, the court conducted a summary hearing, without taking any evidence, and entered an order converting the TRO into a preliminary injunction. In this interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), respondent argues that the court erred by granting the preliminary injunction without first holding an evidentiary hearing. We vacate the order converting the TRO into a preliminary injunction and remand for an immediate evidentiary hearing.

¶ 3       The parties were married, on June 10, 2007, and have one child together. During the marriage, petitioner was self-employed as the sole owner and operator of her business, Beakers & Bottles, and she earned $138,169 in 2023. Beginning in September 2022, respondent worked as a software engineer with ServiceTitan, where he earned an annual base salary of $300,000 and received various RSUs as part of his compensation package.

¶ 4       On November 2, 2022, petitioner filed a petition for dissolution of marriage. On March 18, 2024, the court entered an agreed temporary order requiring respondent to pay petitioner $8,000 per month for unallocated maintenance and child support. On August 26, 2024, petitioner filed an emergency petition for a TRO, stating that when respondent began his employment with ServiceTitan he received RSUs with a target value of approximately $4.2 million, and later received more RSUs with a target value of $268,800, some of which he has been using as collateral to secure a line of credit from a mortgage broker in the amount of $77,000. Respondent also has withdrawn approximately $130,000 from various retirement accounts. Petitioner sought a TRO "and thereafter, a preliminary injunction" prohibiting respondent from liquidating, collateralizing, or otherwise disposing of his retirement accounts and the ServiceTitan RSUs until further order of court. Petitioner further asked the court to prohibit respondent from taking any loans, leveraging any assets, and otherwise taking any actions that would incur additional debt for the marital estate.

Petitioner noted that respondent has a history of unilaterally liquidating or otherwise encumbering marital assets and has been named as a defendant in a racketeering case in federal court, and that if the court did not take immediate action on her emergency petition, he will continue to dissipate the marital estate.

¶ 5    Respondent filed a verified response to petitioner's emergency petition, denying the multimillion-dollar valuation petitioner attributed to his RSUs, noting that the RSUs are not publicly listed or readily transferable and therefore no fair market value is readily accessible. Respondent also denied that he was dissipating the marital estate and explained that the retirement withdrawals and loans against the RSUs were made to pay his legal fees and other living expenses, including his maintenance and child support obligation of $8,000 per month. Respondent also argued that even if the retirement withdrawals and loans against the RSUs constituted dissipation, the emergency petition should be denied because petitioner has not shown the necessary elements for injunctive relief, namely, that the petitioner has a clearly ascertained right needing protection, that she will suffer irreparable harm without the relief, that there is no adequate remedy at law, and she is likely to be successful on the merits of her action. See *Buzz Barton and Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 387 (1985). Respondent contended that petitioner could not prove irreparable harm or an inadequate remedy at law, as the alleged damages ($77,000 in loans against the RSUs and $130,000 in retirement withdrawals) are easily calculable and can be awarded to her during the division of the marital estate. Respondent further argued that petitioner was unlikely to succeed on the merits of her action.

¶ 6    On August 28, 2024, the circuit court entered an order granting petitioner's emergency petition for a TRO, enjoining both parties from withdrawing, selling, collateralizing, or otherwise disposing or dissipating "any and all funds," including but not limited to retirement accounts and

the ServiceTitan RSUs. The court further enjoined both parties from "incurring substantial debt and taking any additional loans, leveraging any assets or property, and taking any other action which would incur additional debt for the marital estate." The court ordered that the TRO would remain in full force and effect until a hearing set on September 18, 2024; the hearing date subsequently was continued to December 3, 2024. The TRO remained in effect.

¶ 7 On October 7, 2024, respondent filed a motion to modify the March 18, 2024, order requiring him to pay $8,000 per month in maintenance and child support. Respondent also sought modification of the August 28, 2024, order granting petitioner's emergency petition for a TRO. In his motion, respondent stated that ServiceTitan was terminating him effective October 11, 2024, and that he anticipated receiving a severance package of six months base pay, a pro-rated bonus, and an amount toward COBRA premiums. Given the loss of his job, respondent argued that his maintenance and support obligation of $8,000 per month was excessive. Respondent also sought modification of the TRO so as to allow him to borrow monies to pay for his basic expenses.

¶ 8 Upon learning of respondent's termination, petitioner filed a "motion to escrow severance income and other immediate relief and supplement to emergency petition for temporary restraining order, preliminary injunction and other relief" (supplemental petition). In the supplemental petition, petitioner alleged that respondent has not secured new employment, is voluntarily underemployed, and that "this is another ploy by [respondent] in [an] attempt to mitigate and/or terminate his maintenance obligation."

¶ 9 Petitioner further alleged in her supplemental petition that respondent continues to dissipate the marital estate. Petitioner argued that recent discovery has shown that respondent has withdrawn $125,000 from an IRA and $100,000 from a 401(k). Respondent also has obtained a "predatory loan of 19.5%" in the amount of $500,000 from an individual named Bret Terrill, loaned $480,000

to a company he now owns with his new girlfriend, and obtained two separate lines of credit against his RSUs. Petitioner argued that if respondent's severance funds, bonus, and RSUs are not escrowed, that he will "continue to excessively spend marital funds and further dissipate same on non-marital expenses." Therefore, petitioner was seeking a TRO and preliminary injunction ordering respondent to escrow the severance income, bonus, and vested RSUs. Petitioner argued that the TRO and preliminary injunction was necessary because she is without an adequate remedy at law, and she will suffer irreparable injury if respondent is not so enjoined. Petitioner further argued that she has a strong likelihood of success on the merits and that the balancing of hardships greatly favors her.

¶ 10    On November 6, 2024, respondent filed a verified response to petitioner's supplemental petition, in which he denied many of the material allegations made therein, including: denying that his RSUs reached their multi-million dollar target value; denying that he is voluntarily underemployed and that he lost his job to keep from paying petitioner maintenance; denying that he is dissipating the marital estate or that he will dissipate his severance funds in the future; denying that he failed to provide petitioner with documentation regarding his RSUs; and denying that petitioner will suffer irreparable injury if respondent is not enjoined, or that petitioner is without an adequate remedy at law, or that there is a strong likelihood of success on the merits of her case and that the balancing of hardships greatly favors her.

¶ 11    On December 3, 2024, the circuit court conducted a summary hearing on many of the outstanding pleadings, including petitioner's petition and supplemental petition for a preliminary injunction, as well as respondent's motion to modify both the March 18, 2024, maintenance and support order and the TRO. The court did not swear in any witnesses, admit any exhibits, or take any testimony, but merely heard the arguments of counsel.

¶ 12    On December 9, 2024, the court denied respondent's motion to modify the March 18, 2024, maintenance and support order and to modify the August 28, 2024, TRO. The court ordered that the TRO be converted to a preliminary injunction pursuant to the following terms: both parties are enjoined from "accessing, spending, withdrawing, disposing of, destroying, encumbering, pledging, transferring, selling, secreting, collateralizing, leveraging, loaning, or dissipating any and all funds" including checking and savings accounts, retirement accounts, and RSUs, except to pay for "expenses in the ordinary course of living for each party"; and both parties are enjoined from "incurring substantial debt and taking any additional loans, leveraging any assets or property, and taking any other action which would incur additional debt for the marital estate." The court ordered that the preliminary injunction shall remain in full force and effect until the entry of the judgment for dissolution of marriage.

¶ 13    On December 17, 2024, respondent timely filed this Rule 307(a)(1) interlocutory appeal from the December 9, 2024, order granting injunctive relief. On February 6, 2025, we entered an order taking this case for consideration on respondent's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (the reviewing court may decide a case on the appellant's brief alone "if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief").

¶ 14    Respondent contends that the circuit court erred in the December 9 order by converting the TRO into a preliminary injunction without first holding an evidentiary hearing.

¶ 15    TROs and preliminary injunctions serve different purposes. *Paddington Corp. v. Foremost Sales Promotions, Inc.*, 13 Ill. App. 3d 170, 174 (1973). A TRO is an emergency remedy of extremely brief duration (*County of Boone v. Plote Construction, Inc.*, 2017 IL App (2d) 160184, ¶ 27), which is meant to preserve the *status quo* until the circuit court can hold a hearing to

determine whether it should grant a preliminary injunction. *Delgado v. Board of Election Commissioners*, 224 Ill. 2d 481, 483 (2007). Before the circuit court can issue the TRO, the petitioner must make a summary showing of the necessity of the order to maintain the *status quo* and to prevent immediate and irreparable harm. *Passon v. TCR, Inc.*, 242 Ill. App. 3d 259, 263 (1993); *Peoples Gas Light and Coke Co. v. City of Chicago*, 117 Ill. App. 3d 353, 355 (1983). Oral argument is an adequate basis for making this summary showing. *Passon*, 242 Ill. App. 3d at 263. If the TRO is without notice, it is limited to a period of 10 days. *County of Boone*, 2017 IL App (2d), ¶ 27 (citing 735 ILCS 5/11-101 (West 2014)). If the TRO is made with notice, the 10-day rule does not apply, but the hearing to determine whether the TRO should be converted to a preliminary injunction must be made within a "short time." *Id.*

¶ 16    Unlike a TRO, a preliminary injunction is not necessarily of extremely brief duration as its function is to maintain the *status quo* until the case is disposed of on the merits. *Peoples Gas*, 117 Ill. App. 3d at 355; *Bullard v. Bullard*, 66 Ill. App. 3d 132, 135 (1978). In contrast to the summary showing required for a TRO, an evidentiary hearing on an application for a preliminary injunction normally is required where the respondent files a verified pleading denying the material allegations in support of injunctive relief. *In re T.M.H.*, 2019 IL App (2d) 190614, ¶ 22. The issuance of a preliminary injunction after an evidentiary hearing is reviewed for an abuse of discretion. *In re Marriage of Weber*, 182 Ill. App. 3d 212, 218 (1989). Where, as here, the circuit court issued the preliminary injunction without holding an evidentiary hearing, our review is *de novo*. *Evans v. Chicago Newspaper Guild-CWA*, 2020 IL App (1st) 200281, ¶ 13.

¶ 17    We find that the circuit court erred by converting the TRO into a preliminary injunction without first holding an evidentiary hearing. The record shows that respondent filed verified pleadings denying the material allegations supporting injunctive relief, thereby raising questions

of material fact that must be resolved by an evidentiary hearing prior to the issuance of the injunction. *In re T.M.H.*, 2019 IL App (2d) 190614, ¶ 22.

¶ 18    Specifically, petitioner's material allegations in support of injunctive relief consisted of her claims that respondent was dissipating the marital estate by taking retirement withdrawals and loans against his RSUs, while voluntarily remaining underemployed so as to terminate his maintenance obligation. Respondent filed multiple verified pleadings denying petitioner's material allegations. First, in his verified response to petitioner's emergency petition for a TRO, he disputed petitioner's valuations of his RSUs, denied dissipating the marital estate, and explained that the retirement withdrawals and loans against the RSUs were made to pay his legal fees and other living expenses, including his maintenance and support obligation of $8,000 per month. Respondent also denied that petitioner could prove the irreparable harm or inadequate remedy at law required for injunctive relief, as her alleged damages were easily calculable and could be awarded to her during the division of the marital estate.

¶ 19    After the circuit court granted petitioner's emergency petition for a TRO, she filed the supplemental petition, in which she largely repeated her material allegations that respondent was dissipating the marital estate by withdrawing funds from his retirement accounts and taking loans against his RSUs. In his verified response to the supplemental petition, respondent again denied the valuation petitioner attributed to the RSUs and he continued to deny dissipating the marital estate by withdrawing his retirement funds and taking loans against the RSUs. Respondent also denied that he is remaining voluntarily underemployed to keep from paying his maintenance and support obligations, and he further denied that petitioner could show the irreparable injury, inadequate remedy at law, and likelihood of success on the merits necessary for injunctive relief. Respondent specifically contended that even if the court found that he had dissipated marital assets,

there was no irreparable harm because the court "can allocate other assets/liabilities to [petitioner] should the Court choose to do so."

¶ 20    On December 3, 2024, the court conducted a summary hearing on the various outstanding pleadings, during which the parties continued to disagree about the need for injunctive relief and the valuation of the RSUs and marital estate. Respondent argued that petitioner was unable to show the irreparable harm necessary for injunctive relief and requested an evidentiary hearing. Petitioner also requested an evidentiary hearing and specifically stated that she was "ready to put [respondent] on as a witness." The circuit court stated that it would give respondent an evidentiary hearing, but it did not do so and instead proceeded with the summary hearing during which it heard oral arguments from counsel but took no testimony. Following the summary hearing, the court entered its order on December 9, 2024, converting the TRO into a preliminary injunction, enjoining the parties from disposing of "any and all funds" including the RSUs and retirement accounts at issue, and also enjoining them from taking on any additional loans.

¶ 21    The court erred by converting the TRO into a preliminary injunction on December 9, 2024, on the basis of a summary hearing, without swearing in a witness, admitting any exhibits, or taking any testimony. Respondent repeatedly denied the material allegations in support of injunctive relief, both in his verified response to petitioner's initial emergency petition for a TRO and in his verified response to her supplemental petition, and again during the summary hearing, thereby raising questions of material fact that needed to be resolved by the taking of evidence. Thus, it was incumbent upon the court to grant the parties' request to hold an evidentiary hearing so as to resolve the various outstanding fact questions prior to ruling on the petition for a preliminary injunction. *In re T.M.H.*, 2019 IL App (2d) 190614, ¶ 22. We vacate the December 9, 2024, order converting the TRO into a preliminary injunction and remand for an immediate evidentiary hearing

on the application for a preliminary injunction. See *e.g.*, *Jurco v. Stuart*, 110 Ill. App. 3d 405 (1982) and *Greenspan v. Mesirow*, 132 Ill. App. 3d 508 (1985) (remanding for an immediate evidentiary hearing on the motion for a preliminary injunction because no hearing had been held for several months after the granting of the TRO). During the pendency of these proceedings, the TRO entered on August 28, 2024, shall remain in effect.

¶ 22    Vacated and remanded with directions.